IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GEORGE FREEMAN, | § § § | |
| *Plaintiff,* | § § § | SA-25-CV-00163-XR |
| vs. | § § § | |
| FRANK BISIGNANO, ACTING COMMISSIONER OF SSA; | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This report and recommendation concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II.  42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned held a hearing on the issues raised in this appeal on December 4, 2025, at which counsel for both parties appeared. After considering Plaintiff's Appeal Brief [#10], Defendant's Brief in Response to Plaintiff's Appeal Brief [#11], Plaintiff's Reply Brief [#13], the transcript ("Tr.") of the SSA proceedings [#4], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the arguments of counsel at the hearing, and the entire record in this matter, the undersigned concludes that the ALJ failed to develop the record as to the effects of Plaintiff's mental impairments on his ability to perform work-related tasks.  It is therefore recommended that the Commissioner's decision be **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

1

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

If the Court finds an error in the ALJ's decision, it will only remand if the claimant has also met his burden of showing that the error was prejudicial. *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). The Court will affirm if the error was harmless. *Id.* at 734–35. Harmless error occurs "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam)).

### III.  Factual Background

Plaintiff George Freeman filed his application for a period of disability and DIB on June 7, 2023, alleging a disability onset date of February 15, 2023. (Tr. 14, 182-85.) At the time of his disability application, Plaintiff was 46 years old with a high school education and work experience as a vocational training instructor and sports instructor. (Tr. 29, 66, 182.) Plaintiff served in the United States Air Force from 1995 to 2017, including four combat zone deployments to Afghanistan and Iraq. (Tr. 442, 1747.) As of December 1, 2017, Plaintiff has a 100 percent service-connected disability rating through the Veterans Administration ("VA"), including a rating of 70 percent for PTSD, 50 percent for hip prosthesis, 30 percent for migraine

headaches, and 30 percent for flat foot condition.  (Tr. 449, 1644.)  Plaintiff's application for DIB was based on the following conditions: PTSD, hip replacement, arthritis, limited seating, limited standing, migraines, and high blood pressure.  (Tr. 222.)

Plaintiff completed an Adult Function Report in support of his application in July 2023. In portions of the Adult Function Report relevant to Plaintiff's challenge to the ALJ's mental RFC determination, Plaintiff reports that he socializes approximately every two weeks, generally gets along well with authority figures, experiences increased anxiety and anger when stressed, and does not like changes to his routine.  (Tr. 242-43.)  Plaintiff's wife completed a third-party Adult Function Report in which she reports a decrease in Plaintiff's social activities and Plaintiff's sleep interruptions due to PTSD.  (Tr. 230-35.)

Plaintiff's application for DIB was initially denied on October 4, 2023, and denied again upon reconsideration on March 8, 2024.  (Tr. 91-99.)  Plaintiff requested an administrative hearing following the denial of his claim.  (Tr. 100-104.)  A hearing took place before Administrative Law Judge ("ALJ") David Wurm on September 17, 2024.  (Tr. 36-68.)  Plaintiff and Vocational Expert ("VE") Melissa Brassfield provided testimony at the hearing, which Plaintiff's attorney also attended.  (Tr. 36-68.)  As for Plaintiff's mental limitations, Plaintiff testified at the hearing that he takes medication for PTSD and sees a mental health counselor for his PTSD and alcohol use.  (Tr. 53-54.)  He continues to have dreams and flashbacks related to military trauma, which can be triggered by crowds, loud noises, or people getting too close to him.  (Tr. 54.)  He is irritable and loses his temper easily, and his PTSD and chronic pain affect his ability to concentrate and maintain focus.  (Tr. 55-56.)  He testified that he does not want to leave his house, loses interest in things he does, remains hypervigilant, and does not go anywhere without his wife.  (Tr. 56-58.)

4

The ALJ issued an unfavorable decision on October 2, 2024.  (Tr. 11-35.)  The ALJ found that Plaintiff met the insured status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff met the requirements of the Social Security Administration for receiving DIB through December 31, 2028, and had not engaged in substantial gainful activity since February 15, 2023, the date of the alleged onset of his disability and date of last insured.  (Tr. 25.)

At step two, the ALJ found Plaintiff to have numerous severe physical impairments and severe mental impairments of PTSD and alcohol use disorder.  (Tr. 16.)  The ALJ noted that these impairments significantly limit Plaintiff's ability to perform basic work activities.  (Tr. 17.) The ALJ found that other physical impairments referenced by the medical evidence in the record were non-severe.  (Tr. 17.)  At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations.  (Tr. 17.)

Before reaching step four of the analysis, the ALJ found that Plaintiff retained the mental residual functional capacity ("RFC") to perform light exertion work with these additional limitations: (1) occasional interaction with coworkers or the public" and (2) occasional adaptations to changes in a routine work setting.  (Tr. 20.)  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 29.)  At step five, the ALJ determined—based on the VE's testimony—that Plaintiff is capable of adjusting to other light, unskilled occupations such as a "cleaner, housekeeper, marker, and mail sorter."  (Tr. 30.) Accordingly, the ALJ found that Plaintiff is not disabled because there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 30.)

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied review on December 10, 2024.  (Tr. 1–6.)  On February 13, 2025, Plaintiff filed the instant case, seeking review of the administrative decision.

## IV.  Analysis

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence because it is based on the ALJ's own interpretation of medical evidence rather than a medical opinion.  Having considered the record and briefing, the undersigned finds that the ALJ failed to develop the record as to the effects of Plaintiff's mental impairments on his ability to perform work-related tasks.  The Court should therefore vacate the Commissioner's decision and remand for further proceedings consistent with this opinion.

An RFC determination is the most an individual can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight to be given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).  Moreover, the ALJ is not required to have a medical opinion that directly matches his RFC determination.  *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (per curiam).  Where no medical opinion has been provided or where the ALJ rejects all medical opinions of record, the Court's "inquiry focuses

upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

However, the Fifth Circuit has made clear that an ALJ "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557).  Various district courts have relied on this principle in vacating RFC determinations that are not supported by a medical opinion and are instead based on the ALJ's subjective interpretation of medical data in the record. *Tiede v. Dudek*, 770 F. Supp. 3d 965, 971-72 (W.D. Tex. 2025) (collecting cases).  If "the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Id.* at 972 (quoting *Garcia v. Berryhill*, No. EP-17-cv-00263-ATB, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (citation omitted).

In determining that Plaintiff has a mental RFC that is limited to "occasional interaction with coworkers or the public; and, [the ability to] occasionally adapt to changes in a routine work setting," the ALJ first considered non-opinion medical evidence from professionals who treated and examined Plaintiff.  (Tr. 22, 24-26.)  This evidence included treating records from Plaintiff's appointments with a social worker at the VA clinic (Tr. 22, 237); a psychology consult and follow-up at Audie Murphy Medical Center (Tr. 24-25, 1771-72, 1837); and behavioral health and mental status examination notes from various medical appointments, including primary care visits (Tr. 1801, 1870, 1877).

The ALJ also considered the opinion of a consultative psychological examiner, Dr. Timothy Emge-Hoog, Ph.D., who found that Plaintiff had PTSD.  (Tr. 26.)  The ALJ found Dr. Emge-Hoog's opinion unpersuasive because it only addressed Plaintiff's ability to follow

instructions for "one-two step activities," and was therefore inconsistent with other normal mental status examinations where Plaintiff was found to show at least average knowledge, normal attention and concentration, normal memory, and intact thought content and processes. (Tr. 27.)  The ALJ also found Dr. Emge-Hoog's opinion unpersuasive because it did not contain any limits on social interaction despite Plaintiff's reports of difficulty interacting with other people or crowds.  (Tr. 27.)

Finally, the ALJ considered the opinion evidence and prior administrative medical findings of the initial and reconsideration-level State Agency Psychological Consultants (SAPCs).  (Tr. 27-28.)  Both the initial level SAPC (Linette Castillo, Psy.D.) and reconsideration level SAPC (George Grubbs, Psy.D.) found that Plaintiff's mental impairment of PTSD was not severe.  (Tr. 73, 80.)  Both SAPCs reported that no mental RFCs were associated with Plaintiff's claim and did not assess the effect of any mental limitations on his ability to work.  (Tr. 75, 83.)  In contrast, the ALJ found that the record evidence was consistent with a moderate limitation in interacting with others and adapting and managing oneself, supporting a finding that Plaintiff's PTSD was severe.  (Tr. 27-28.)  The ALJ thus found unpersuasive the SAPCs' opinions that Plaintiff's PTSD was not severe.  *Id.*

Substantial evidence does not support an ALJ's RFC determination where the ALJ rejects all medical opinions of record and there is no evidence that addresses the effects of a claimant's impairments on their ability to work.  *Griffin v. O'Malley*, No. SA-23-CV-01090-FB-ESC, 2025 WL 440284, at \*7–9 (W.D. Tex. Jan. 17, 2025), *report and recommendation adopted sub nom. Griffin v. Colvin*, No. SA-23-CV-1090-FB, 2025 WL 440281 (W.D. Tex. Feb. 7, 2025) (citing *Raper v. Colvin*, 262 F. Supp. 3d 415, 422-23 (N.D. Tex. 2017)).  In *Griffin*, SSA determined there was insufficient evidence to determine the claimant's RFC, and the ALJ rejected the only

other medical opinions of record. *Id.* at 7. The ALJ therefore did not rely on any medical opinion, consultative examination, or medical source statement in evaluating the claimant's work-related limitations. Similarly, the ALJ in this case did not rely on any expert medical opinion or evidence that evaluated the effect of Plaintiff's mental limitations on his ability to work in fashioning Plaintiff's mental RFC: the SAPCs' opinions provided no medical expert evidence related to the effect of Plaintiff's mental impairments on his ability to work, and the ALJ rejected the relevant portion of the consultative psychological examiner's opinion.

The Commissioner contends that an ALJ does not improperly substitute his lay opinion for that of a medical provider just by interpreting the medical evidence and determining Plaintiff's capacity for work. *Taylor*, 706 F.3d at 602–3. However, as in *Griffin*, the Commissioner fails to identify any evidence in the record that the ALJ relied upon to support his conclusions regarding "the effect [Plaintiff's] condition had on his ability to work." *See Ripley*, 67 F.3d at 557. Although behavioral and mental status examination notes in the record indicate that Plaintiff was appropriately dressed and groomed and exhibited a pleasant affect at certain doctor's appointments, the records say nothing regarding his mental exertional capacity and for how long it could be sustained. In *Ripley* itself, the record included "a vast amount of medical evidence" establishing that the claimant had a problem with his back, but the record did *not* establish the effect of this condition on the claimant's ability to work. *Id.* Here, the ALJ acknowledged the medical evidence in the record establishing that Plaintiff had the severe condition of PTSD, as well as other mental conditions. But, as in *Ripley*, the record does not establish the effect of these conditions on Plaintiff's ability to work.

While an ALJ has discretion to reject medical sources' opinions, he "cannot then independently decide the effects of Plaintiff's mental impairments on [his] ability to perform

9

work-related activities, as that is prohibited by *Ripley* . . . even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply." *Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at \*10 (N.D. Tex. Jan. 16, 2015).  The ALJ thus had the duty to obtain an expert medical opinion about the kinds of work tasks that Plaintiff could still perform given his mental impairments in order to fully develop the record. *Id.* (citing *Ripley*, 67 F.3d at 557).  It is not "inconceivable" that a medical opinion would have found that Plaintiff had a more restrictive mental RFC than the one determined by the ALJ and that this opinion would have affected the ALJ's findings.  *See Keel*, 986 F.3d at 556.  The ALJ's failure to develop the record was therefore not harmless, and remand for further proceedings is required on the issue of the effect of Plaintiff's mental impairments on his ability to work.

### V.  Conclusion

Based on the foregoing, the Court finds that the ALJ erred by failing to develop the record and determining Plaintiff's mental RFC without any medical opinions as to his conditions' effect on his ability to work.  The ALJ's mental RFC determination is therefore not supported by substantial evidence.  Because this error was not harmless, the undersigned recommends that the Commissioner's decision finding that Plaintiff is not disabled be **VACATED** and that this case be **REMANDED** for further fact-finding and proceedings in accordance with this opinion.

### VI.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

     SIGNED this 17th day of February, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE